## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA



|  |  |
|---|---|
| Tamara Miller, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Finance of America Reverse LLC d/b/a American Advisors Group,<br>Defendant. | **Case No.:** 8:23-cv-1788<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ. AND THE FLORIDA TELEPHONE SOLICITATION ACT, FLA. STAT § 501.059 ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. Plaintiff, Tamara Miller ("Plaintiff") brings this action against Defendant Finance of America Reverse LLC d/b/a American Advisors Group ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, et seq. and the Florida Telephone Solicitation Act, ("FTSA") Fla. Stat § 501.059.

2. This is a putative class action pursuant to the TCPA and FTSA.

3. Defendant offers digital marketing, advising and services in the digital

1

sphere.   To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Middle District of Florida.

8. Any violations by Defendant was knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendants' names in this

Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendants. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant

provide and market its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant have made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

12.    Plaintiff is a natural person residing in the City of Tampa, State of Florida.

13.    Defendant is a company based in City of Irvine, State of California, conducting business in reverse mortgages.

## THE TCPA

14. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

15. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

16. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

   **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

   **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

   **(C)** both such actions. 47 U.S.C § 227(c)(5).

17. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because,

as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

18. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

19. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27

F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

20. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

21. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142

(2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.  Id.

23. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

24. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

25. As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591,

at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S.

Ct. 1540, 1549 (2016) (emphasis original)).

**FLA. STAT. § 501.059**

26. It is a violation of the FTSA to "make or knowingly allow a telephonic

sales call to be made if such call involves an automated system for the

selection or dialing of telephone numbers or the playing of a recorded

message when a connection is completed to a number without the prior

express written consent of the called party." Fla. Stat § 501.059(8)(A).

27. The statute defines "telephonic sales call" as a "telephone call, text

message, or voicemail transmission to a consumer for the purpose of

soliciting a sale of any consumer goods or services, soliciting an

extension of credit for consumer goods services, or obtaining

information that will or may be used for the direct solicitation of a sale

of consumer goods or services or an extension of credit for such

purposes." Fla. Stat. § 501.059(1)(I).

28. A person will be defined as a "called party" if they are a "person who

is the regular user of the telephone number that receives a telephonic

sales call," under Fla. Stat. § 501.059(1)(A).

29. An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. § 501.059(4)(ĸ).

### GENERAL ALLEGATIONS

30. At all times relevant, Plaintiff was an individual residing within the State of Florida.

31. At all times relevant, Defendant conducted business in the State of Florida.

32. Plaintiff is the sole user of the telephone number ending in 5895 for personal use and has been on the Do Not Call registry since April 25, 2020.

33. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

34. On or around June 16, 2020, Plaintiff received a prerecorded voice call from caller ID 985-228-9301. Upon answering, Plaintiff promptly told the avatar voice she was uninterested. The avatar began asking Plaintiff questions regarding her age, whether she had a mortgage, and approximately how much she was paying monthly for this mortgage. Plaintiff recognized immediately it was an avatar based on its responses

(and non-responses) to her questions. After the avatar asked whether she would like to be transferred to an advisor, Plaintiff hung up. Upon information and belief, this number belongs to Defendant and/or Defendant's agent.

35. On or around June 17, 2020, Plaintiff received a prerecorded voice call from caller ID 985-268-8323. The avatar asked her identical questions to the June 16, 2020, call. Plaintiff asked the avatar to stop calling her number and hung up.  Upon information and belief, this number belongs to Defendant and/or Defendant's agent.

36. On or around June 23, 2020, Plaintiff received multiple calls from caller ID 985-268-8369. Plaintiff attempted to call the number back to see who was calling and was also sent to a recording. The recording stated to email  customerservicenow2016@gmail.com.  Upon  information  and belief, this number belongs to Defendant and/or Defendant's agent.

37. On June 23, 2020, Plaintiff received a live call twice, from caller ID 225-224-6958, the agent stated it was American Advisor Group and gave the email of contactus@learn.americanadvisorsgroup.com. Plaintiff told the agent to stop calling and remove her from the list.

38. On or around June 29, 2020, Plaintiff again received a prerecorded voice call, offering a reverse mortgage program.

39. On July 7, 2020, Plaintiff received a prerecorded voice call from caller ID 985-257-7161. This call was received after she had already emailed Defendant once more to tell them to take Plaintiff off the call list.

40. Defendant's phone calls constitute telephone solicitation because they encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to offer reverse mortgage services.

41. Plaintiff received the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.

42. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.  This is in violation of 47 U.S.C. § 227(a)(5).

43. Defendant's unsolicited phone calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

44. Defendant's phone calls also inconvenienced Plaintiff and caused disruption to her daily life.

45. Defendants' unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone calls including how they obtained her number and who the Defendant was.

46. Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendants poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

47. In a recent decision en banc by the Eleventh Circuit, the Court found that plaintiffs have a concrete injury under Article III with as little as one call or text from a defendant. *Drazen v Godaddy.com, LLC*, USCA11, Case No. 21-10199  (11th Cir. en banc July 24, 2023). The Eleventh Circuit specifically found:

In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and personal." Id. at 462 n.1. For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury. While an unwanted text message is insufficiently offensive to satisfy the common law's elements, Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA. As a result, the plaintiffs' harm "is smaller in degree rather than entirely absent." Hunstein, 48 F.4th at 1249.

## CLASS ALLEGATIONS

## PROPOSED CLASS

48. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

49. Plaintiff brings this case on behalf of the two Classes defined as follows:

The Federal TCPA Prerecorded Voice Class

All persons within the United States who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

The Federal TCPA DNC Class

All persons within the United States who received two phone calls within a 12 month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendants first call, within the four years prior to the filing of this Complaint.

The FTSA Record Class

All persons within the State of Florida who received any solicitation/telemarketing phone calls from Defendant involving the playing of a recorded message when a connection is completed to said person's cellular telephone without the prior express written consent of the called party and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

50. Defendant and its employees or agents are excluded from the Class.

Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

51. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

52. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants call records.

**COMMON QUESTIONS OF LAW AND FACT**

45. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

(1)   Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS or pre-recorded voice;

(2)   Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(3)   Whether Defendant conduct was knowing and willful;

(4)   Whether Defendant is liable for damages, and the amount of such damages; and

(5)   Whether Defendant should be enjoined from such conduct in the future.

46. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

47. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

48. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

49. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by

17

the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

50. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(B)

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

51. Plaintiff re-alleges and incorporates the foregoing paragraphs 1-50 as if fully set forth herein.

52. It is a violation of the TCPA to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using a prerecorded voice to any telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

53. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

54. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

55. Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using a prerecorded voice to make non-emergency telephone calls

to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

56. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using a prerecorded voice to call Plaintiff and the putative class. The violations were therefore willful or knowing.

58. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

59. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls with pre-recorded voice messages, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

60. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and

every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C)

## COUNT II

### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

61. Plaintiff re-alleges and incorporates the foregoing paragraphs 1-50 as if fully set forth herein.

62. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

   a. an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

   b. an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

   c. both such actions.

63. Defendant – or third parties directed by Defendant dialed numbers without to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the Class defined below.

64. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making two or more non-emergency telephone calls to the phones of Plaintiff and the other members of the putative Class without their prior express written consent.

65. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff was on the Do Not Call Registry. The violations were therefore willful or knowing.

66. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT III

### VIOLATIONS OF FLA. STAT. § 501.059

### (ON BEHALF OF PLAINTIFF AND THE CLASS)

67. Plaintiff re-alleges and incorporates the foregoing paragraphs 1-50 as if fully set forth herein.

68. Defendant – or third parties directed by Defendant – made calls involving a recording when the call connected to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class in violation of Fla. Stat § 501.059(8)(A).

69. Under Fla. Stat § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call. Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when these telephonic sales calls were made. *Id.*

70. Defendant has, therefore, violated Fla. Stat § 501.059(8)(A) AND Fla. Stat § 501.059(1)(G) by calling using a recording to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

71. Defendant knew that it did not have prior express consent to make these calls and knew, or should have known, that it was using a recording. The violations were therefore willful or knowing.

72. As a result of Defendant conduct and pursuant to Fla. Stat § 501.059(10)(B), Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**Prayer for Relief**

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

   a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

   b. A declaration that Defendant's practices described herein violate the Florida Telephone Solicitation Act, Fla. Stat. § 501.059;

   c. An injunction prohibiting Defendant from using a prerecorded voice message to call telephone numbers assigned to cellular telephones without the prior express permission of the called party;

   c. An award of actual and statutory damages; and

   d. Such further and other relief the Court deems reasonable and just.

## TRIAL BY JURY

73. Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 9, 2023                              Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE_____
RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Grouo, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
301 E. Bethany Home Road
Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com
Facsimile: (800) 520-5523
ryan@kazlg.com